**SO ORDERED.**

**SIGNED this 16 day of July, 2007.**



_____
**ROBERT E. NUGENT**
**UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____

NOT DESIGNATED FOR PUBLICATION

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| TRACI LEANN EVERETT, | ) | Case No. 06-11802 |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |
| DIANE HENRY, | ) | |
| Plaintiff, | ) | |
| vs. | ) | Adversary No. 06-5472 |
| | ) | |
| TRACI LEANN EVERETT, | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION

The plaintiff Diane Henry accuses defendant-debtor Traci Everett of willful and malicious damage to her property when defendant, without complying with the provisions of the Kansas

Residential Landlord and Tenant Act ("KRLTA")[1], caused plaintiff's possessions to be removed from a rental property that plaintiff had vacated and disposed of them as trash. Plaintiff sued defendant in state court and obtained a judgment against defendant for conversion and damages of $33,000 and now seeks to have this debt excepted from defendant's discharge under 11 U.S.C. § 523(a)(6). Trial of this matter was held May 16, 2007 and the Court took the matter under advisement. Plaintiff appeared in person and by her attorney Glenn D. Young, Jr. of Young, Bogle, McCausland, Wells & Blanchard, P.A. Defendant appeared in person and by her attorney Donald C. Tinker, Jr. of Robbins, Tinker, Smith & Tinker.

Jurisdiction

This is a core proceeding over which the Court has subject matter jurisdiction.[2]

Factual Background

Plaintiff commenced a lawsuit against defendant in state court arising out of defendant's disposal of plaintiff's personal property left at a residential rental property that plaintiff had formerly rented but had vacated. Following trial of the state court action, judgment was entered against defendant on June 14, 2006. The state court found that defendant converted plaintiff's personal property and assessed damages against defendant in the amount of $33,000, the purported value of the personal property. Plaintiff's efforts to enforce and collect this state court judgment precipitated defendant's chapter 7 bankruptcy filing on September 21, 2006. Plaintiff countered with the filing of this nondischargeability proceeding on October 20, 2006.

The facts regarding the dispute between plaintiff and defendant, as established by the state

---

[1] KAN. STAT. ANN. § 58-2540 *et seq.* (2005).

[2] 28 U.S.C. § 157(b)(2)(I) and (b)(1); 28 U.S.C. § 1334(b).

court judgment, and as supplemented by additional evidence at trial before this Court, are as follows. Plaintiff began renting a house in Haysville in July 2003. The landlord died during the tenancy and defendant, the landlord's step-daughter, thereafter collected the rents and acted as landlord for the property.[3] Plaintiff fell behind in her rent payments and as a result, defendant informed plaintiff on or about September 1, 2004, that plaintiff would have to vacate the property. Plaintiff proceeded to move out of the house on September 6, 2004.

On September 10, 2004, defendant along with a friend, went to the rental property and discovered items of personal property remaining in the house and generally found the rental property "trashed."[4] Defendant took pictures of the rental property on that day and those pictures were admitted into evidence at the trial before this Court.[5] On September 11, defendant called plaintiff and left a message on plaintiff's phone that the locks had been changed and requesting plaintiff to contact her regarding cleaning up the property. Defendant testified that she believed the items of personal property left by plaintiff in the house were trash. Plaintiff attempted to return defendant's call to no avail and went to the house on September 11 to find that she was locked out of the house and garage and unable to retrieve any of her possessions.[6] Plaintiff contends that she left messages on defendant's phone and that defendant never called her back. Defendant testified

---

[3] Though not relevant for the purposes of this adversary proceeding, the state court concluded that defendant was acting as a landlord pursuant to KAN. STAT. ANN. § 58-2453(e).

[4] Defendant's friend testified that the photographs taken depicted the condition of the house on that day. She stated the house was very dirty, flea infested, and contained a "bunch of trash."

[5] Defendant's Ex. A-Z.

[6] While there on September 11, plaintiff did not take with her any of the property outside the house such as the barbecue grill or bird bath.

-3-

at trial that she did not have an answering machine on the telephone number she had given to plaintiff. In any event, plaintiff and defendant never communicated with one another during this period and plaintiff did not return to the rental property after September 11.

On September 13, defendant ordered a dumpster and it was delivered to the site by Waste Management on September 15. Defendant hired individuals that her step-father had used for other rental properties to clean up the property, dispose of the items in the house, and prepare the property for re-letting. The hired help did not indicate to defendant that they had found anything of value in the house. Defendant herself was not present for the disposal or cleaning and did not take anything from the house.

At some point during the September 11-15 time frame, plaintiff's father stopped by the rental property, and retrieved lawn equipment located outside. He did not tell plaintiff that he had been by the house and picked up some property. On September 20, plaintiff wrote defendant and demanded access to the rental to remove her remaining belongings. By this time, apparently, plaintiff's personal property and belongings had already been disposed of.

The state court concluded that the tenancy between plaintiff and defendant was subject to the KRLTA. Under that Act, when a tenant vacates rental property and leaves personal property at the rental, the landlord is obligated to store the property for a thirty day period and give notice before selling or disposing of the tenant's personal property.[7] Because defendant did not comply with this statutory requirement, the state court concluded that she converted plaintiff's property. The state court further found that the inventory of property produced by plaintiff at the state court trial was worth $33,000 and awarded damages to plaintiff in that amount.

---

[7] KAN. STAT. ANN. § 58-2565(d).

-4-

Case 06-05472   Doc# 23   Filed 07/16/07   Page 4 of 9

However, apart from the conclusion that defendant was liable for conversion, the state court made no finding that defendant willfully or maliciously converted plaintiff's property. Plaintiff's counsel conceded as much at trial. Indeed, in a somewhat confusing finding, the state court found that "[d]efendant is 100% at fault," thereby injecting comparative fault, a concept generally associated with negligence, into a conversion case.[8] This Court gives the state court's findings and conclusions res judicata effect and is bound by the state court determination that personal property existed, that it had value, and that the personal property was converted.[9] But in the absence of a finding by the state court that defendant's conversion of the plaintiff's personal property was willful and malicious, plaintiff cannot rely alone on the state court judgment and the doctrine of res judicata or collateral estoppel. It is incumbent upon plaintiff to demonstrate that defendant willfully and maliciously damaged plaintiff's property.

The Court now assesses the evidence introduced at trial to determine whether the willful and malicious standard has been met.[10]

<u>Analysis and Conclusions of Law</u>

Plaintiff has the burden of proving, by a preponderance of the evidence, that the state court

---

[8] Plaintiff's Ex. 4, p. 4, ¶ 9.

[9] *See Grogan v. Garner* 498 U.S. 279, 284-85 n. 11, 111 S. Ct. 654, 112 L.Ed. 2d 755 (1991) (the doctrine of collateral estoppel may be applied in bankruptcy dischargeability proceedings); *In re Klippel*, 183 B.R. 252, 258 (Bankr. D. Kan. 1995) (elements of collateral estoppel recited that preclude re-litigation of issues in dischargeability proceeding).

[10] In the final pretrial order, plaintiff also contended that the debt was nondischargeable under the fiduciary fraud exception, § 523(a)(4). However, plaintiff presented no evidence of a fiduciary relationship between her and defendant. Plaintiff failed to demonstrate the existence of an express or technical trust as required for § 523(a)(4) liability. *See Fowler Bros. v. Young (In re Young),* 91 F.3d 1367,1371 (10th Cir. 1996). Therefore, the Court will disregard the §523(a)(4) claim and focus its analysis on plaintiff's § 523(a)(6) claim.

-5-

judgment against defendant should be excepted from defendant's discharge as a willful and malicious injury to plaintiff's property.[11]

In construing the willful and malicious injury exception to discharge, the Supreme Court has held that the standard of conduct for nondischargeability requires an intentional act with an actual intent to cause injury.[12] The willful and malicious standard is not satisfied by an intentional act that merely leads to a reasonably foreseeable injury.[13] The Tenth Circuit Bankruptcy Appellate Panel has discussed the showing necessary to prove that the defendant acted with the intent to injure the creditor or the creditor's property, noting that a willful injury may be proven directly, with specific intent to harm, or indirectly, by showing defendant knew of the creditor's rights and knew that her conduct would cause particularized injury.[14]

Here, there was no direct evidence that defendant intended to harm plaintiff or her property. There were no statements, or threats communicated by defendant that she intended to throw away valuable possessions of plaintiff that plaintiff had requested be preserved or saved. Nothing in the demeanor or testimony of either plaintiff or defendant suggested ill will or malice on the part of defendant in causing the disposal of plaintiff's property. And, while defendant recognized that plaintiff left "property" at the rental property, she believed that "property" to be trash. Based upon the photographic evidence submitted by defendant, the Court concludes that defendant's belief was a reasonable one. These photographs suggest that all defendant caused to be removed from the

---

[11] *In re Diel*, 277 B.R. 778, 783 (Bankr. D. Kan. 2002)

[12] *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S. Ct. 974, 140 L.Ed. 2d 90 (1998).

[13] *See In re Parker*, 264 B.R. 685, 700 (10th Cir. BAP 2001).

[14] *In re Longley*, 235 B.R. 651, 657 (10th Cir. BAP 1999).

premises was trash and that defendant had no reason to know or believe that this removal of trash would cause any harm or injury to plaintiff.

The Court notes that the state court determined that the property destroyed did in fact exist and could be valued at $33,000. The bankruptcy court is bound by this finding of fact, however dubious it may be in light of the photographic evidence. The decision of the matter before this Court, however, turns not on whether the property had value, but whether the defendant harbored the requisite intent to damage it when she ordered it removed. The state court determination that defendant was liable for conversion of plaintiff's property, standing by itself, is insufficient to establish a willful and malicious injury to plaintiff's property. Moreover, the state court's injection of comparative fault – a negligence concept – is inconsistent with the tort of conversion.[15] The tort of conversion has been described in this State as a strict liability tort; the defendant's state of mind is irrelevant.[16] Conversion is the unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another.[17] But demonstrating the elements of conversion does not equate to satisfying the willful and malicious standard of § 523(a)(6). Where it is shown that defendant believed she was throwing away trash left at the premises, defendant cannot be said to have willfully and maliciously injured plaintiff's property interests. Absent some extrinsic evidence of defendant's intent to injure plaintiff's property interests, plaintiff has not proven her § 523(a)(6) claim.

---

[15] *See Kawaauhau, supra* (Reckless and negligent acts are specifically excluded from the Court's interpretation of willful injury.).

[16] *See Millennium Financial Services, L.L.C. v. Thole*, 31 Kan. App. 2d 798, 808, 74 P.3d 57 (2003) (the required intent is shown by the use or disposition of property belonging to another; the defendant's state of mind is irrelevant to the issue of conversion).

[17] *Hammer v. Thompson*, 35 Kan. App. 2d 165, 129 P.3d 609 (2006).

-7-

In *In re Budig*, the District Court affirmed the bankruptcy court's determination that debtor's conversion of health insurance benefits that had been assigned to hospital by an admissions agreement signed by debtor at the time of his hospital admission did not constitute a willful and malicious injury.[18] In that case, debtors unwittingly spent insurance proceeds on day-to-day living expenses not realizing they had been assigned to the hospital. Noteworthy in *Budig* is the District Court's statements regarding the extent of the debtor's knowledge.

> The bankruptcy court found that neither debtor knew of the assignment clause in the Admissions Consent Agreement. . . . Neither debtor knew an assignment could make the insurance money belong to the hospital.
>
> The Budigs also did not understand the nature of a noncontract provider. Based on past experiences with BCBS, the debtors believed that BCBS would pay Via Christi directly. No effort was made by the hospital to explain the insurance payment procedure. Although the debtors received a bill from the hospital, the bill did not mention the assignment or any legal claim to the insurance proceeds beyond that of a general creditor.
>
> Because the debtors did not know the money belonged to Via Christi, they could not have had the necessary intent to cause willful injury. . . . There is no evidence that the debtors knew of the assignment. Even if the Budigs knew of the assignment, there is no evidence that they understood the nature of an assignment or that an assignment would give Via Christi rights in the insurance money. Unless the debtors knew of Via Christi's rights, they could not intend to injure Via Christi . . .[19]

A similar analysis and result should obtain in the case at bar. The evidence showed that defendant credibly believed the property left by plaintiff on the premises to be trash and at the time defendant disposed of the property in the dumpsters, plaintiff had not communicated to defendant that she was intending to keep this property or identified any of the property left that she was claiming. Nor did

---

[18] *Via Christi Regional Medical Center v. Budig (In re Budig),* 240 B.R. 397 (D. Kan. 1999).

[19] *Id.* at 401.

-8-

plaintiff advise defendant that valuable property was left at the premises. Nor was there evidence presented showing that defendant knew of the KRLTA requirement to temporarily store abandoned tenant property and give notice to the tenant before selling or disposing of the tenant's personal effects left at the rental property. Thus, even if defendant knew that plaintiff was claiming this property, there was no evidence that she knew of plaintiff's rights to the property under the KRLTA. For these reasons, the Court finds that defendant did not intend to injure plaintiff's property interests when she disposed of the property left at the rented premises.

Conclusion

Plaintiff failed to satisfy her burden of proving that defendant's disposal of plaintiff's possessions from the rental property was willful and malicious within the meaning of § 523(a)(6). The state court made no finding that defendant acted willfully and maliciously and this Court cannot find that defendant's conduct rose to this level based upon the record before it. Accordingly, judgment should be entered in favor of defendant on plaintiff's complaint and costs assessed to the plaintiff. A Judgment on Decision will issue this same day.

# # #